IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:17CR424 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | |
| WISAM RIZK, | ) | OPPOSITION TO MOTION FOR |
| | ) | RELEASE TO AUSTRIAN |
| Defendant. | ) | GOVERNMENT OFFICIALS |

Now comes the United States of America, by and through its counsel, Justin E. Herdman, United States Attorney, and Chelsea S. Rice and Rebecca C. Lutzko, Assistant U.S. Attorneys, and hereby opposes Defendant Wisam Rizk's Motion for Release to Austrian Government Officials. (R. 70: Motion for Release, PageID 711). For the reasons set forth below, this Court should deny Rizk's motion.

**I.    Factual and Procedural History**

In November 2018, Rizk pled guilty, pursuant to a written plea agreement, to three counts: Conspiracy to Commit Wire Fraud and Honest Services Fraud, in violation of 18 U.S.C. § 1349, Wire Fraud and Honest Services Wire Fraud, in violation of 18 U.S.C. §§ 1343, 1346, and 2, and Making a False Statement, in violation of 18 U.S.C. § 1001(a)(2) and (3). As part of his plea agreement, Rizk admitted that he and his coconspirator, Gary Fingerhut, engaged in a scheme to defraud their employer, the Cleveland Clinic Foundation ("the Clinic"), and told lies to cover it up. (R. 37: Rizk Plea Agreement, PageID 116).

As part of his plea agreement, Rizk also agreed that: (1) he is not a citizen of the United States; (2) he is a native of Lebanon and citizen of Austria; and (3) upon "completion of his

criminal proceedings, including any sentence of incarceration," he shall be removed to Austria. (Id., PageID 125).

On October 30, 2019, this Court sentenced Rizk to 58 months in custody with the Bureau of Prisons ("BOP"), followed by one year of supervised release, and ordered him to pay a $300 special assessment and $2,784,847 in restitution to the Clinic. (R. 62: Judgment, PageID 687). On that same date, this Court issued an Order of Judicial Removal for Rizk, ordering that Rizk be removed from the United States to Austria, "which removal is to be effected upon completion of his term of incarceration." (R. 61: Order of Judicial Removal, PageID 684) (emphasis added). This Court allowed Rizk to self-report to the custody of the BOP.

On November 27, 2019, Rizk filed a motion to delay his report date so that he could care for his family while his wife recovered from surgery. (R. 67: Unopposed Motion to Extend Report Date, PageID 704). The government did not oppose this motion. This Court granted Rizk's motion and ordered him to report to the custody of the BOP on or before March 12, 2020. (R. 68: Marginal Order). On March 12, 2020, Rizk reported to the BOP and is currently housed at the Moshannon Valley Correctional Institution in Philipsburg, PA. On May 5, 2020 – only 55 days after Rizk began his 58-month sentence – he filed the pending motion, asking this Court to issue an order directing the BOP to release him to the custody of the Austrian Ministry of Justice to complete his sentence. For the reasons set forth below, the Court should deny this motion.

## II. Legal Framework Governing International Prisoner Transfers

The transfer of prisoners held in the United States to serve the remainder of their sentences in other countries is governed by the Transfer of Offenders to or from Foreign Countries Act (the "Act"), 18 U.S.C. § 4100 et seq. Pursuant to the Act, only the Attorney General or a designated Department of Justice ("DOJ") official is authorized to approve or

2

disapprove individual transfer requests. Id. at § 4102(3), (11).[1] Such transfers may only take place pursuant to a treaty providing for such a transfer that is in force between or among the relevant countries. Id. at § 4100(a). The United States and Austria are parties to the Council of Europe Convention on the Transfer of Sentenced Persons, March 21, 1983, 22 I.L.M. 530 (the "Convention" or "COE"), which provides authorization for prisoner transfers among signatories.

Article 2 of the Convention states:

> A person sentenced in the territory of a Party may be transferred to the territory of another Party, in accordance with the provisions of this Convention, in order to serve the sentence imposed on him. To that end, he may express his interest to the sentencing State or to the administering State in being transferred under this Convention.

Transfer "may be requested by either the sentencing State or the administering State." Id. at Art. 2(3). But a sentenced person may be transferred only if all of the following are satisfied:

> (a) the defendant is a national of the administering State; (b) the judgment is final; (c) the defendant has at least six months to serve on his sentence, or his sentence is indeterminate; (d) the defendant consents to the transfer; (e) the acts for which the defendant was sentenced also constitute a criminal offense if committed in the administering State; and (f) <u>the sentencing and administering State agree to the transfer</u>.

Id. at Art. 3(1) (emphasis added).

Notably, the Convention never requires a state to transfer a prisoner. The legislation that provides for international prisoner transfers under agreements, including the Convention, vests in the Attorney General the discretion to accept or deny transfer requests, to promulgate regulations, and to delegate within DOJ the authority the statute confers. See 18 U.S.C. § 4102; Toor v. Holder, 717 F. Supp. 2d 100, 10707 (D.D.C. 2010).

---

[1] The Attorney General has delegated the authority to consider international prisoner transfers to certain individuals in the Office of Enforcement Operations ("OEO") at DOJ. See 28 C.F.R. § 0.64-2.

Because the discretion to grant or deny Rizk's transfer request is vested in the Attorney General and his designee (specifically, the International Prisoner Transfer Unit ("IPTU") at OEO), this Court lacks jurisdiction to review Rizk's transfer request and it should deny his motion on that ground. Rizk's proper avenue for his request is not this Court, or even the U.S. Attorney's Office, but rather through the BOP, which will then forward his request to the OEO for review and a decision.

### III. Rizk Also Lacks Standing Because the Convention Does Not Extend a Privately Enforceable Right to an Individual Inmate Seeking Transfer

This Court should also deny Rizk's motion for the separate and independent reasons that he does not have standing to seek enforcement of an international treaty. "Whether a treaty creates a right in an individual litigant that can be enforced in domestic proceedings by that litigant is for the court to decide as a matter of treaty interpretation." Mora v. New York, 524 F.3d 183, 193 (2d Cir. 2008). "[I]nternational treaties establish rights and obligations between States-parties—and generally not between states and individuals, notwithstanding the fact that individuals may benefit because of a treaty's existence." Id. at 200. Thus, there is a "presumption that 'treaties do not create privately enforceable rights in the absence of express language to the contrary,'" id. at 201 (quoting Medellín v. Texas, 552 U.S. 491, 506 n.3 (2008)), "even when the treaty may benefit individuals." Yosef v. Killian, 646 F. Supp. 2d 499, 507 (S.D.N.Y. 2009). In the absence of a privately enforceable right created by treaty, an individual lacks standing to challenge an alleged violation of that treaty. See United States v. Suarez, 791 F.3d at 363, 367 (2nd Cir. 2015) ("Generally speaking, absent protest or objection by the offended sovereign, [a party] has no standing to raise the violation of international law as an issue." (quoting United States v. Reed, 639 F.2d 896, 902 (2nd Cir. 1981)) (alterations in Suarez and internal quotation marks omitted)).

4

The Convention contains no provisions extending a privately enforceable right to an individual inmate seeking transfer. Indeed, "the Convention never <u>requires</u> a state to transfer a prisoner"; rather, "the agreement only allows transfer when all three parties (the prisoner and both states) agree to it." <u>Toor</u>, 717 F. Supp. 2nd at 107 (citing Convention art. 3(1)(d) & (f)), if the two countries are satisfied that all other criteria for transfer have been met) (emphasis added).

Several courts that have examined the Convention (or one of its bilateral analogues) have concluded that it does not create any privately enforceable rights, and thus an individual inmate, such as Rizk, has no standing to challenge DOJ's refusal to transfer him to serve the remainder of his sentence in another country. See <u>Yosef</u>, 646 F. Supp. 2d at 506-07 (concluding that Israeli citizen lacked "standing . . . to challenge the denial of his request for an international transfer" under the Convention, and collecting cases); <u>Lan Xuan Dang v. Ask-Carlson</u>, No. 13 Civ. 32, 2013 WL 3424175, at *3 (W.D. La. July 8, 2013) ("Nothing in either the Act . . . or the Convention contains express language creating an individually enforceable right."); <u>Toor</u>, 717 F. Supp. 2nd at 107 ("Since the Convention has no express language to rebut a presumption against a private right of action, plaintiff lacks standing to sue under the treaty or its implementing statute."); <u>United States ex rel. Rickard v. Sternes</u>, 149 F. Supp. 2d 437, 451 (N.D. Ill. 2001) ("[T]he Convention imparts no individual right upon prisoners to obtain a transfer."). Courts have similarly held that the Act "does not create a private right of action." <u>Id</u>.; <u>see</u> <u>also</u> <u>Yosef</u>, 646 F. Supp. 2d at 507 (holding that prisoner "does not have standing . . . to challenge the denial of his request for an international transfer or to seek specific performance under the Act").

5

Accordingly, because neither the Convention nor the Act provide an individual right of action, Rizk lacks standing with this Court to seek the relief requested in his motion and it should also be denied for this reason.

### IV. To the Extent that Rizk's Motion is a Request for Compassionate Release, it should be Denied Because Rizk Has Not Exhausted his Administrative Remedies

At the end of his Motion, Rizk asks this Court for permission to "serve the intermediate timeframe in home confinement until he is transferred to Austrian authorities." Id. at PageID 715. To the extent that his motion is a request for this Court to exercise some general modification of sentence or compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court should deny Rizk's motion because he has not exhausted his administrative remedies with the BOP before coming to this Court.[2]

Before the First Step Act, prisoners could obtain compassionate release only if the Bureau of Prisons authorized a motion seeking release with the sentencing court. After the First Step Act, prisoners may file for compassionate release on their own, but only after first requesting that the Bureau of Prisons seek compassionate release on their behalf and then having the Bureau deny that request or waiting 30 days with no action from the Bureau:

> **(c) Modification of an Imposed Term of Imprisonment.—**The court may not modify a term of imprisonment once it has been imposed except that—
>
> **(1)** in any case—
>
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion

---

[2] Because it is not clear that Rizk is actually requesting compassionate release, the government will not address the merits of such a request at this time. Should this Court find that Rizk's motion is indeed such a motion, and *after* Rizk in fact first exhausts his administrative remedies, the government respectfully asks for a brief period of time to file a response on the merits of such a request.

6

on the defendant's behalf or the lapse of 30 days from the receipt of such a
request by the warden of the defendant's facility, whichever is earlier, may reduce
the term of imprisonment (and may impose a term of probation or supervised
release with or without conditions that does not exceed the unserved portion of
the original term of imprisonment), after considering the factors set forth
in section 3553(a) to the extent that they are applicable, if it finds that—

**(i)** extraordinary and compelling reasons warrant such a reduction . . . .

and that such a reduction is consistent with applicable policy statements
issued by the Sentencing Commission . . . .

18 U.S.C. § 3582.

While Rizk provided a letter that his wife submitted to the BOP requesting Rizk's transfer to Austrian custody, there is no indication that Rizk has requested compassionate release from the BOP, much less that he requested such relief and either exhausted his appeals or waited 30 days with no action from the BOP. The undersigned also contacted the BOP staff, and they indicated that as of June 10, 2020, Rizk has not asked the BOP to seek compassionate release or home confinement on his behalf. Such a request, followed by the 30-day time period, is mandatory and restricts a court's ability to order a prisoner's release. See United States v. Alam, No. 20-1298, 2020 WL 2845694 (6th Cir. June 2, 2020). Rizk has not satisfied these mandatory prerequisites.

**V.     To the Extent that Rizk's Motion is a Request for Release to Home Confinement, it should be Denied Because this Court Has No Authority to Direct the BOP to Place Rizk in Home Confinement**

Rizk has requested that this Court allow him to be released to home confinement pending his requested transfer to Austrian custody. That request should be denied because this Court has no authority to direct BOP to place a defendant in home confinement. Rather, such designation decisions are committed solely to BOP's discretion.

Once a sentence is imposed, BOP is solely responsible for determining an inmate's place of incarceration. See 18 U.S.C. § 3621(b); Moore v. United States Att'y Gen., 473 F.2d 1375,

7

1376 (5th Cir. 1973) (per curiam); see also McKune v. Lile, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). A court has no authority to designate a prisoner's place of incarceration. United States v. Voda, 994 F.2d 149, 151-52 (5th Cir. 1993). Because Rizk's request for home confinement alters only the place of incarceration, not the actual term of incarceration, only BOP may grant or deny such a request.

Moreover, there is no constitutional or statutory authority that allows the Court to order home confinement. A prisoner has no constitutional right to confinement in any particular place, including in home confinement. See Sandin v. Conner, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); Meachum v. Fano, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons."). Following the imposition of sentence, a court has limited jurisdiction to correct or modify that sentence absent specific circumstances enumerated by Congress in 18 U.S.C. § 3582. United States v. Garcia, 606 F.3d 209, 212 n.5 (5th Cir. 2010) (per curiam). Section 3582(c) contemplates only a reduction in sentence. See § 3582(c). But Rizk's request to serve a portion of his term in home confinement, as opposed to prison, works no reduction to his sentence. Home confinement merely permits the inmate to serve out his term of imprisonment at home. Rizk's request for such relief therefore falls outside § 3582(c)'s limited grant of authority to this Court to modify a sentence post-conviction. Because § 3582(c) deprives the Court of jurisdiction to grant home confinement and because Rizk offers no other statutory authority to

8

support his request for such relief, this Court has no authority to act on his request for such relief in this forum.[3]

## VI. Conclusion

For the foregoing reasons, this Court should deny Rizk's request for an order from this Court directing the BOP to release him to Austrian custody and Rizk's request for home confinement.

                                          Respectfully submitted,

                                          JUSTIN E. HERDMAN
                                          United States Attorney

By:   /s/ Chelsea S. Rice
        Chelsea S. Rice (OH: 0076905)
        Rebecca C. Lutzko (OH: 0069288)
        Assistant United States Attorney
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3752/3888
        (216) 522-2403 (facsimile)
        Chelsea.Rice@usdoj.gov
        Rebecca.Lutzko@usdoj.gov

---

[3] If a court grants a sentence reduction, it may "impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." § 3582(c)(1)(A). In imposing a term of supervised release, the court may impose a period of home confinement as a condition of supervised release, provided that the court finds that home confinement is a "substitute for imprisonment." USSG § 5F1.2; *see* 18 U.S.C. § 3583(d). Alternatively, a court may consider modifying an existing term of supervised release to add a period of home confinement, consistent with USSG § 5F1.2. See § 3583(e)(2).