UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **WISAM RIZK,** | ) | CASE NO.   1:17CR424 |
| | ) | 1:21CV1787 |
| **Defendant-Petitioner,** | ) | |
| | ) | **SENIOR JUDGE** |
| vs. | ) | **CHRISTOPHER A. BOYKO** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Plaintiff-Respondent.** | ) | |

**CHRISTOPHER A. BOYKO, SR. J.:**

  Defendant Wisam Rizk attempts to vacate his conviction under 28 U.S.C. § 2255. (Doc. 83). He also seeks to discover evidence outside of the record. (Docs. 87 & 88). But because Defendant's request to vacate is untimely and his requests for discovery do not establish good cause, Defendant's Motions are **DENIED**.

## I. BACKGROUND FACTS

  On November 16, 2018, Defendant pleaded guilty to one count of Conspiracy to Commit Mail Fraud and Wire Fraud, a violation of 18 U.S.C. § 1349; one count of Wire Fraud and Honest Services Wire Fraud, a violation of 18 U.S.C. §§ 1343, 1436 and 2; and False Statements, a violation of 18 U.S.C. § 1001(a)(2) and (3). For these crimes, the Court sentenced Defendant to 58 months imprisonment. The Court also ordered Defendant's removal from the United States to Austria upon the completion of Defendant's incarceration.

  Important here is what happened after Defendant's conviction and judgment. Initially, Defendant filed a Notice of Appeal. However, roughly two weeks later, on November 27, 2019,

Defendant filed a notice to dismiss his appeal.  The Sixth Circuit granted dismissal that same day.

Also on that same day, Defendant moved to extend his report date to the Bureau of Prisons.  Defendant justified his request on his wife's upcoming surgery in February of 2020.  The Court granted this motion and extended Defendant's report date until March 12, 2020.

Around the same time as Defendant reported to prison, the COVID-19 pandemic swept across the nation.  The pandemic led to the Bureau restricting the movement of all federal prisoners.  This included limiting access to law libraries.  It also resulted in various transfers of prisoners throughout the country.

Defendant claims this happened to him.  Beginning in March of 2020, Defendant was subjected to 24-hour lockdowns with no access to the law library.  These restrictions remained in place throughout much of the year.  The restrictions also largely continued into 2021, with Defendant experiencing only limited access to the law library.

Yet during this time, Defendant remained on top of his case.  Through counsel, he requested transfer to Austrian authorities.  (Doc. 70).  He also sought a reduction in sentence with both the Bureau and this Court.  (Doc. 74).  The Court denied both motions.  (Docs. 72 & 79).  Defendant decided to continue to pursue these challenges through the Department of Justice and the Sixth Circuit.  But nothing fruitful came from these efforts.

Over 21 months after he dismissed his appeal, Defendant mailed the pending motion on September 10, 2021.  (Doc. 83).  The Government opposed, arguing that Defendant's motion was untimely.  (Doc. 89).  The Court ordered Defendant to reply solely to the Government's statute of limitations argument (Non-Doc. Entry 12/16/2021) and Defendant filed a lengthy Reply.  (Doc. 93).

After he filed his Motion to Vacate, Defendant also moved to compel the government (and others) to produce additional information. (Docs. 87 & 88). The Government never responded to either motion.

## II. LAW & ANALYSIS

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Defendant has a one-year period of limitation running from the latest of the following:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution of United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Here, Defendant voluntarily dismissed his appeal on November 27, 2019. The one-year statute of limitations started that same day. Thus, Defendant had until November 27, 2020, to file his motion under § 2255. Yet Defendant filed his Motion on September 10, 2021. Therefore, on its face, Defendant's Motion is untimely.

Defendant does not disagree with this application of the one-year clock. Nor does he argue that his Motion should be governed under the other provisions in § 2255(f). Instead, Defendant argues that three exceptions apply to the straightforward application of the statute of

limitations – his actual innocence, his attorneys' incompetence and equitable tolling. For the following reasons, Defendant's arguments have no merit.

**B.** **Actual Innocence**

Defendant argues that he is actually innocent of the charges against him. If Defendant can prove this, it provides an exception to the AEDPA's one-year statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *Phillips v. United States*, 734 F.3d 573, 580-81 (6th Cir. 2013) (applying *McQuiggin* to the § 2255 context). However, "tenable actual-innocence gateway pleas are rare." *McQuiggin*, 569 U.S. at 386. "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence…that was not presented at trial." *Schulp v. Delo*, 513 U.S. 298, 324 (1995). Courts hold that "exculpatory scientific evidence, trustworthy eyewitness accounts and critical physical evidence" not presented at trial all constitute "new, reliable evidence." *Id.*; *Davis v. Bradshaw*, 900 F.3d 315, 326 (6th Cir. 2018). In the end, the defendant must show that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schulp*, 513 U.S. at 329.

Defendant's claim of innocence is predicated on two theories: one, he is factually innocent because he disclosed his conflict of interest; and two, he is legally innocent because the Indictment is both insufficient and inaccurate. The Court holds that neither theory supports a "tenable actual innocence claim" to serve as an exception to the statute of limitations.

As to his factual innocence, Defendant relies on evidence he had possessed since before his guilty plea. "A defendant's own late-proffered testimony" in support of his actual innocence in a habeas action "is not 'new' because it was available at trial." *Hubbard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004). Nor can Defendant merely repackage the evidence and consider it new

evidence to support his claim. *Id.* at 341. Rather, Defendant must present some newly discovered evidence, which he does not. *Schulp*, 513 U.S. at 332 (O'Connor, J., concurring).

To the extent Defendant relies on polygraph results, that does not qualify as 'new, reliable evidence' under the actual innocence exception. Results of polygraphs are inherently unreliable. *United States v. Scarborough*, 43 F.3d 1021, 1026 (6th Cir. 1994). Thus, polygraph results are not "reliable evidence" to demonstrate one's innocence to forgo the statute of limitations. *See Bolton v. Berghuis*, 164 Fed. App'x 543, 550 (6th Cir. Jan. 13, 2006) (polygraph evidence did not qualify as new and reliable evidence to support actual innocence exception to the statute of limitations). Accordingly, Defendant's claims of factual innocence fail to serve as an exception to the statute of limitations.

Likewise, Defendant's claim of legal innocence also fails. The Sixth Circuit says that a petitioner can demonstrate his actual innocence by showing that an intervening change in the law establishes his innocence. *Phillips*, 734 F.3d at 581-82. To fall within this exception, a defendant must demonstrate:

> (1) the existence of a new interpretation of statutory law; (2) which was issued after the petitioner had a meaningful time to incorporate the new interpretation into his direct appeal or subsequent motions; (3) is retroactive; and (4) applies to the merits of the petition to make it more likely than not that no reasonable juror would have convicted him.

*Id.* at 582.

Defendant's claim to legal innocence stems from his rendition of the facts and his belief that the indictment is insufficient. In support of these claims, Defendant cites a plethora of caselaw. However, none of that caselaw provides a "new interpretation of statutory law." Rather, the caselaw Defendant relies upon existed before his guilty plea, thus allowing him

"meaningful time" to incorporate into his case. Accordingly, Defendant's claim of legal innocence fails.

Finally, while *McQuiggin* allowed a claim of actual innocence to circumvent the statute of limitations, it also allowed courts to consider the "timing of the petition" alleging actual innocence. *McQuiggin*, 569 U.S. at 399-400. As discussed above, Defendant brought his claim of actual innocence – predicated solely on evidence that he knew of at the time of his plea – nine months after the statute of limitations expired. Thus, the timing of Defendant's claim to innocence cuts against him.

For all these reasons, Defendant has not presented a tenable claim of actual innocence to avoid the statute of limitations.

## C. Equitable Tolling

Defendant's next two proffered excuses fall under the same legal analysis. Essentially, Defendant claims he is entitled to extend – i.e., toll – the starting date of the limitations period because of circumstances outside his control. The Government disagrees.

Defendant's claims fall under a general equitable tolling review. A defendant may be entitled to equitable tolling of the statute of limitations if he demonstrates "(1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010). A defendant seeking equitable tolling must satisfy both prongs. *Menominee Indian Tribe of Wisc. v. United States*, 577 U.S. 250, 256 (2016). The burden of establishing grounds that warrant tolling rest with the defendant. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Equitable tolling claims are granted sparingly. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010).

Defendant cannot satisfy his burden in this case. First, Defendant has not shown that he pursued his rights diligently. Diligence "for equitable tolling purposes is 'reasonable diligence,' not maximum feasible diligence." *Holland*, 560 U.S. at 653 (citations omitted). It also requires a petitioner to act diligently both before and after the extraordinary circumstance arose. *See Pace*, 544 U.S. at 418-19 (2005). Defendant points to two proofs of his diligence – 1) his attorneys filed two motions after his sentencing; and 2) his actions while imprisoned during the COVID-19 pandemic.

As to his first point, Defendant cannot rely on his attorneys' filings to demonstrate diligence. For one, Defendant uses his attorneys' actions as both a shield and a sword to the statute of limitations. Defendant wants to rely on their professional competence here to demonstrate his own diligence. Yet at the same time, Defendant cites his attorneys' incompetence as a reason he failed to file a timely motion to vacate. Defendant cannot have it both ways. Moreover, both motions Defendant relies on do not attack his conviction, which is the "right" equitable tolling is concerned with. Instead, both motions essentially agree with the conviction, but seek to have the sentence served elsewhere – either in Austria or at home. Because Defendant was not pursuing his rights to vacate or correct his sentence, he cannot rely on his prior motions to constitute his own diligence under equitable tolling.

As to his second point, the Court finds that Defendant did not act diligently during the COVID-19 pandemic. This point will be discussed more below, but the Court finds Defendant could have filed a timely § 2255 motion despite the pandemic.

Not only has Defendant not acted diligently, but he has also failed to show that an extraordinary circumstance stood in his way. Defendant argues eight "extraordinary circumstances" prevented him from filing a timely § 2255 petition: i) his innocence claim; ii)

failure to claim against the indictment; iii) ineffective assistance of counsel; iv) limited access to the legal library; v) litigation for removal to Austria; vi) movement of prisons; vii) lack of legal knowledge; and viii) lack of necessary forms. The Court holds that none of the circumstances – either alone or in combination – constitute extraordinary circumstances contemplated by the law.

Before addressing each circumstance, the Court notes two overarching points. First, none of these circumstances existed for the months before Defendant reported to prison. Yet Defendant did nothing to attack his conviction like he does here – despite having knowledge of all the evidence he now presents. While Defendant cites his wife's surgery as a reason for his inaction during this period, that surgery did not occur until the end of February 2020. Defendant dismissed his appeal in November of 2019. At a minimum then, Defendant had three months to challenge his conviction. Moreover, the record belies Defendant's claim that he was unaware of his rights under § 2255. In his Plea Agreement, Defendant specifically waived his rights to collaterally attack the sentence. The Court reviewed this waiver and found that Defendant entered his plea knowingly and voluntarily.

Second, many of Defendant's cited circumstances flow from the COVID-19 pandemic. District courts in the Sixth Circuit have determined that "the COVID-19 pandemic does not automatically warrant equitable tolling for a petitioner who seeks it on that basis. [Rather, t]he petitioner must establish that he was pursuing his rights diligently and that the COVID-19 pandemic specifically prevented him from filing his motion." *United States v. West*, 578 F. Supp. 3d 962, 967 (N.D. Ohio 2022) (Lioi, J.); *see also Pryor v. Erdos*, 2022 WL 4245038, *9 (N.D. Ohio Sept. 17, 2021) (Barker, J.) *aff'd* 2022 WL 1021911 (6th Cir. Mar. 31, 2022); *Taylor v. Valentine*, 2021 WL 864145 (W.D. Ky. Mar. 8, 2021); *United States v. Barga*, 2022 WL

16900261, * 4 (E.D. Ky. May 26, 2022). Accordingly, just because Defendant faced imprisonment during the pandemic does not automatically warrant equitable tolling.

Moving then to Defendant's specific points, circumstances (i) and (ii) – Defendant's claim of (i) innocence and (ii) insufficient indictment – did not present roadblocks to a timely § 2255 claim. Rather, both claims are legal arguments. Defendant knew these points by sentencing at the latest, yet he neglected to raise them. Thus, the Court finds that Defendant claim of innocence and attack on the Indictment are not extraordinary circumstances that prevented the timely filing of a § 2255 motion.

Neither is the performance of post-conviction counsel. As mentioned above, Defendant now attacks his counsel's performance arguing that their incompetent advice prevented a timely filing. While counsel's egregious conduct may serve as an extraordinary circumstance to warrant equitable tolling, *Holland*, 560 U.S. at 652, that is not what happened in this case. Here, counsel pursued alternative ways for Defendant to serve his sentence. Professional decisions to pursue different courses of action are not egregious roadblocks to a defendant's compliance with time requirements. *See Malcom v. Payne*, 281 F.3d 951, 962 (9th Cir. 2002) (no equitable tolling where counsel chose to pursue clemency and limitations period expired during that process). Indeed, counsel would have faced trouble filing a post-conviction attack on the conviction due to Defendant's knowing waiver of the right. (*See* Plea Agreement, Doc. 37, PageID: 127). Even if counsel could be said to have acted negligently, that is not enough to warrant equitable tolling. *Holland*, 560 U.S. at 651-52. In the end, by employing attorneys to act on his post-conviction behalf, Defendant bore the risk that they may not have pursued the exact route he would have preferred. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Accordingly, counsels' performance did not constitute an extraordinary circumstance to warrant equitable tolling.

Along these lines, awaiting the results of his transfer request to Austria is not an extraordinary circumstance. Soon after his sentencing, Defendant sought transfer to Austria under the Department of Justice. This transfer program restricts inmates with pending collateral attacks from requesting a transfer. But the program has no "statute of limitations" like a collateral attack under § 2255 does. Yet, Defendant writes that a transfer to Austria was his main goal. (Doc. 93, PageID: 990-91, Defendant "felt his transfer to an Austrian prison…was his first and most important goal"). The fact that he chose to pursue a transfer route (with no limitations period) instead of a collateral attack (with a one-year limitations period) was Defendant's decision. He cannot now rely on his own decision as an extraordinary circumstance. Moreover, even accepting as true the fact that Defendant learned of his denial in March of 2021, Defendant still waited six months before filing his § 2255 motion. By this time, Defendant admits that he had four hours of access a day to the prison's law library. The six-month time gap is thus unreasonable, especially since Defendant knew an attack under § 2255 was likely untimely. Accordingly, Defendant's decision to pursue transfer to Austria is not an extraordinary circumstance to warrant tolling of the limitations period.

Finally, Defendant raises circumstances that all federal inmates faced – especially those confined during the COVID-19 pandemic. Yet the Court received hundreds of timely inmate filings during that time. Thus, circumstances like lack of law library access, movement between institutions, lack of forms and lack of legal knowledge are all insufficient to warrant equitable tolling in Defendant's case.

Moreover, Defendant is unlike the typical defendant the Court sees. Indeed, the Court agrees with the Government about Defendant's sophistication and intelligence. Both attributes were evident throughout each of the Court's interactions with Defendant. And Defendant

displayed that intelligence throughout his briefing on this matter, arguing for his release in over thirty pages and countering the Government with over eighty pages in his Reply. While this briefing violated the District's Local Rules, it nonetheless demonstrates his competence.

The fact that Defendant could not access the library or the correct forms for filing are not extraordinary circumstances. As mentioned, Defendant did not even begin pursing his collateral attack options until his transfer request was denied. From then on, he could access the law library. Nor is it necessary that a defendant support his post-conviction attack with law. Moreover, Defendant argues he was delayed because the Court never sent him the right form. But the form Defendant sought was available on the District's website. Despite this ease of access, the form is not absolutely required to bring a motion to vacate. Like the Court overlooked Defendant's lengthy briefing, it is probable the Court would have overlooked this requirement as well.

Finally, Defendant's transfer of institutions did not prevent his timely filing. Defendant specifically mentions the transfer of institutions that took place in September of 2021. But not only is this date well past the original statute of limitations deadline, it also did not affect his filing. Indeed, Defendant mailed his motion mere days after transferring institutions. Accordingly, the Court does not find that Defendant's movement between institutions prevented the timely filing of the motion to vacate.

Ultimately, the Court disagrees with Defendant that extraordinary circumstances prevented Defendant from timely filing a motion to vacate under § 2255. As such, his claim for equitable tolling is meritless.

**D.     Evidentiary Motions**

Under the Rules Governing § 2255 Motions, a court must grant leave before the parties engage in discovery. 28 U.S.C. § 2255, Rule 6(a). To receive leave, the party must demonstrate good cause for the requested information. *Id.* The requesting party must also provide the reason for the request, as well as specify the documents sought or the questions needed to be answered. *Id.* at Rule 6(b).

With two motions filed after his § 2255 motion, Defendant seeks (i) the transcript of the proceedings before the Grand Jury; and (ii) a disclosure of potential conflicts between the Cleveland Clinic and several individuals involved in Defendant's case. (Docs. 87 & 88). Neither motion as merit. At the outset, both motions seek to support the merits of Defendant's § 2255 Motion. But as the Court held above, the statute of limitations prevents the Court from considering the merits of Defendant's motion. These requests do not influence the statute of limitations consideration.

Defendant claims he needs the grand jury transcripts to show that the Indictment was predicated on false facts. In other words, the Government did not present the facts as Defendant believes support his case. Normally, grand jury proceedings remain secret. Fed. R. Crim. P. 6(e). To lift the veil of secrecy, a defendant must demonstrate the existence of a particularized need for such discovery that outweighs the general rule of secrecy. *Clinkscale v. United States*, 367 F. Supp. 2d 1150, 1154 (N.D. Ohio 2005) (citing *Douglas Oil v. Petrol Stops Northwest*, 441 U.S. 211, 220-23 (1979)). A defendant bears a heavy burden to show a particularized need. *United States v. Darden*, 353 F. Supp. 3d 697, 722 (M.D. Tenn. 2018) (citing *FDIC v. Ernst & Whinney*, 921 F.2d 83, 87 (6th Cir. 1990)). Moreover, requests for disclosure should be limited to what is necessary and so the disclosure is no greater than the need for secrecy. *Id.* Finally, the

Fifth Amendment does not require a prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury. *United States v. Williams*, 504 U.S. 36, 45 (1992); *United States v. Angel*, 355 F.3d 462, 475 (6th Cir. 2004) (the Government has no judicially enforceable duty to provide a grand jury with exculpatory evidence).

Defendant has not satisfied his heavy burden in showing his particularized need for the grand jury transcripts. Again, since the Court has ruled that Defendant's post-conviction attack is barred by the statute of limitations, he has no further need for the transcripts. *See Jones v. Perry*, 2020 WL 10486255, * 3 (M.D. Tenn. Dec. 21, 2020) (no particularized need when related federal claim is procedurally defaulted). Moreover, Defendant's attack on the grand jury proceedings is likewise meritless. He claims the Government failed to present the facts as he argues occurred. This is essentially asking the Government to present exculpatory information to the grand jury, which it has no obligation to do. Finally, Defendant broadly seeks the entire grand jury proceeding and not a limited subset which would help preserve the secrecy of the proceeding. For these reasons, Defendant's request for grand jury transcripts fails.

Likewise, Defendant's speculative inquiry into alleged conflicts also fails. In his motion, Defendant believes that various actors in his matter may have had a personal conflict of interest involving the Cleveland Clinic. This list of actors includes the attorneys on both sides of the matter, plus the investigators, plus those who "have a substantive impact on the…proceedings within the court[,]" which presumably means the Court itself. (Doc. 88, PageID: 925). But the Court finds that this does not satisfy good cause necessary to allow for discovery in this post-conviction setting. The requested information is both speculative and conspiratorial. As such, the Court denies Defendant's Motion.

## III. CONCLUSION

Accordingly, Defendant's Motion to Vacate under § 2255 (Doc. 83) is **DENIED** as untimely under the statute of limitations. Likewise, his request for post-conviction discovery (Docs. 87 & 88) are **DENIED**.

The Court finds an appeal from this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3). Defendant has failed to make a substantial showing that he was denied any Constitutional right. The Court thus declines to issue a certificate of appealability. 28 U.S.C. § 2253(c)(2); § 2255, Rule 11(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**

                                                 s/ Christopher A. Boyko
                                                **CHRISTOPHER A. BOYKO**
                                                **Senior United States District Judge**

**Dated: September 21, 2022**